OPINION
{¶ 1} Appellant, Angelique Howard, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, finding her in contempt of a court order. Appellant, Neil Howard, appeals the "decision to deprive him of custody" of Draven Howard and Eleni Howard. We affirm the decision of the Juvenile Court.
 {¶ 2} Draven was born on January 16, 2000. In April of 2000, Draven was hospitalized numerous times due to many subdural hematomas and retinal hemorrhages. Draven was brought into the emergency room on one occasion, unconscious and not breathing. Draven was intubated to facilitate his breathing. Once stabilized, Draven was transferred to another hospital where he was diagnosed as a victim of shaken baby syndrome.
 {¶ 3} On April 12, 2000, the Butler County Children's Services Board ("BCCSB") filed a complaint in the Butler County Juvenile Court alleging the dependency of Draven and his sister Eleni. The complaint also alleged the abuse and neglect of Draven. Adjudication hearings were conducted on April 13, 2000, July 6, 2000, July 24, 2000, August 17, 2000, October 13, 2000, November 30, 2000, February 2, 2001, May 24, 2001, November 13, 2001, and November 15, 2001. A maternal aunt and uncle were granted temporary custody of the children.
 {¶ 4} On August 16, 2000, Neil was indicted for child endangerment, for events allegedly occurring from February to April 2000. On October 20, 2000, the juvenile court ordered, "[Neil] shall vacate the family home and shall not be present in or in the vicinity of the family residence at any time."
 {¶ 5} On May 24, 2001, Angelique received temporary custody of Draven. Seven days later, the juvenile court ordered that "[Neil's] visits shall continue to be supervised by BCCSB or as agreed by BCCSB." Draven was returned to Angelique on June 6, 2001.
 {¶ 6} On August 1, 2, and 3, 2001, BCCSB caseworkers observed a red pickup truck parked near the Howard family residence on 13 Cessna Court in the city of Hamilton. BCCSB caseworkers believed the red pickup truck belonged to Neil. BCCSB contacted Hamilton police on August 3, 2001. Detectives from the Hamilton police observed Neil outside the residence, informed him that he was in violation of a court order, and requested that he vacate the premises. No further action was taken by the Hamilton police.
 {¶ 7} On August 8, 2001, BCCSB filed a motion alleging that Angelique was in contempt of court for allowing Neil to have unsupervised contact with Draven on August 3, 2001. Angelique was found in contempt of court for allowing Neil to have contact with Draven. Neil was found in contempt of court for violating the court order since he was present in or in the vicinity of the family residence.
 {¶ 8} On November 6, 2001, in a separate trial, Neil was convicted of child endangerment. On November 15, 2001, the juvenile court found that Draven was an abused child, and that both Eleni and Draven were dependent. Furthermore, the court found that Neil was the perpetrator of the abuse against Draven. Angelique was given legal custody of the children and named the residential parent.
 {¶ 9} The mother, Angelique, appeals the finding of contempt of court raising two assignments of error. The father, Neil, appeals the "decision to deprive him of custody" of Draven and Eleni.
Mother's Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT'S FINDING THAT DEFENDANT-APPELLANT WAS IN CONTEMPT OF COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} An appellate court reviews a civil contempt order on an abuse of discretion standard. State ex rel. Ventron v. Birkel (1981),65 Ohio St.2d 10, 11. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Booth v.Booth (1989), 44 Ohio St.3d 142, 144; Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. It is well-settled that the "evidence necessary to support contempt must be clear and convincing." Pugh v. Pugh (1984),15 Ohio St.3d 136; Andrulis v. Andrulis (1985), 26 Ohio App.3d 164, 165.
 {¶ 12} The October 20, 2000 court order states, "[Neil] shall vacate the family home and shall not be present in or in the vicinity of the family residence at any time." The May 31, 2001 court order states, "[Neil's] visits shall continue to be supervised by BCCSB or as agreed by BCCSB." BCCSB caseworkers noticed a red pickup truck they believed belonged to Neil parked near the Howard residence and informed the Hamilton police.
 {¶ 13} Detective Mark Poppe went to the Howard family residence at 13 Cessna Court and observed Neil behind the mobile home, running away from the officers. The officers followed Neil and informed him he was "in violation of a court order and he needed to leave while [the officers] were present." Angelique allowed Neil to be in the residence when Draven was present on August 3, 2001. The visitation was not supervised or agreed to by BCCSB.
 {¶ 14} Contempt is a disregard or disobedience of an order of a judicial authority. State v. Flinn (1982), 7 Ohio App.3d 294, 295. There is clear and convincing evidence that the court order was violated since Angelique admitted Neil was in and around the residence when Draven was present, without the consent or attendance of BCCSB. The juvenile court's decision finding Angelique in contempt for allowing unsupervised contact between Draven and Neil was not unreasonable, arbitrary or unconscionable. Therefore, the assignment of error is overruled.
Mother's Assignment of Error No. 2:
 {¶ 15} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY NOT AFFORDING HER AN OPPORTUNITY TO PURGE HERSELF OF CONTEMPT."
 {¶ 16} A sanction for civil contempt must allow the contemnor an opportunity to purge the contempt. Carroll v. Detty (1996),113 Ohio App.3d 708, 712. A trial court abuses its discretion by ordering purge conditions which are unreasonable or where compliance is impossible. Burchett v. Miller (1997), 123 Ohio App.3d 550. Angelique argues that once the contemnor "chooses to comply with the court's order, the purpose of the sanction is achieved and the sanction is discontinued." Cleveland v. Ramsey (1988), 56 Ohio App.3d 108, 110.
 {¶ 17} However, there is no way to purge past violations of a no-contact order, therefore, we believe that the court did not err in failing to provide a purge mechanism for the finding of contempt. SeeBoggs v. Boggs (1997), 118 Ohio App.3d 293, 299; State v. Christon
(1990), 68 Ohio App.3d 471, 478. Therefore, the assignment of error is overruled.
Father's Assignment of Error:
 {¶ 18} "THE TRIAL COURT'S DECISION TO DEPRIVE APPELLANT OF THE CUSTODY OF ELENI AND DRAVEN HOWARD IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 19} Neil argues that "despite the criminal conviction for child endangerment there was substantial confusion in the medical testimony regarding the timing and cause of the traumatic injury to Draven." Therefore, Neil argues the trial court's decision "to deprive him of custody is not supported by clear and convincing evidence." Furthermore, Neil argues that "the best interest of his children would be served by a grant of legal custody to him."
 {¶ 20} The standard of review in an appellate court in custody cases is an abuse of discretion. Pater v. Pater (1992), 63 Ohio St.3d 393,396. The term "abuse of discretion" connotes more than an error of law or judgment; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore, 5 Ohio St.3d at 219.
 {¶ 21} Neil maintains that in order to deprive parents of the custody of their children, R.C. 2151.414 requires a determination by the juvenile court that the children cannot be placed with either parent within a reasonable time and a determination of the best interests of the children. However, no motion for permanent custody under R.C. 2151.413
was made. Furthermore, custody has not been granted to any agency and the parents have not been deprived of the custody of their children. The children have been placed with the mother, Angelique. Therefore, Neil's reliance upon R.C. 2151.414 is misplaced.
 {¶ 22} The November 15, 2001 judgment entry gives Angelique legal custody of the children. Furthermore, the judgment entry states, visitation shall be granted as set forth herein, "as previously ordered, or as arranged by and through: father's visitation with Eleni unrestricted." The judgment entry also orders a psychological evaluation of Neil.
 {¶ 23} Under R.C. 2151.353(A), "if a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * (3) Award legal custody to either parent * * *." In determining whether to return children to a parent, the court shall consider the best interest of the children. R.C. 2151.42. Neil was convicted of child endangerment in a jury trial and is incarcerated. Additionally, the juvenile court found that Neil was the perpetrator of Draven's abuse.
 {¶ 24} Consequently, based upon the safety issues that Neil presents to Draven, the decision of the juvenile court to grant legal custody of the children to the mother, Angelique, was not unreasonable, arbitrary or unconscionable. Furthermore, the decision to require Neil's visitation with Draven to be supervised, as previously ordered, and the decision to remove all restrictions to visitation with Eleni, was not unreasonable, arbitrary or unconscionable. Moreover, the court retains continuing jurisdiction over the children pursuant to R.C. 2151.353(E)(1), and Neil may seek to modify the court's dispositional order at any time. R.C. 2151.353(E)(2). Therefore, the assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and VALEN, J., concur.